IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON LACEY, | No. 2:10-CV-1695-JAM-CMK-P |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| B. HAMKAR, et al., | |
| Defendants. | |
| _____/ | |

      Plaintiff, a prisoner proceeding with retained counsel, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' motion for summary judgment (Docs. 18, 19, 20, 21, 22, and 23).[1]

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A). See Doc. 31.

1

## I. BACKGROUND

### A. Plaintiff's Allegations

Plaintiff names the following as defendants: Hamkar, Ma, and Sweeny. All defendants are alleged to be prison medical staff. Plaintiff claims that, between January 14, 2009, and January 26, 2009, he complained to defendants of "excruciating and severe pain in his left chest and left side of his body and lower back as well as difficulty breathing and trouble sitting upright." Plaintiff states that he made these complaints during the course of "going over to the medical department for pill-call and medication" for his asthma. According to plaintiff, defendant Sweeny ignored his complaints. It is plaintiff's contention that Sweeny should have placed plaintiff in line to see the doctor immediately. Instead, according to plaintiff, Sweeny instructed plaintiff to submit a heath care service request form, which plaintiff did on three occasions.

Next, plaintiff claims that during one of his visits to the medical department during the period in January 2009, he complained to a nurse about his pain and symptoms and the nurse relayed his complaints to defendant Hamkar, a prison doctor. Plaintiff states that, without any examination at all, defendant Hamkar directed the nurse to "give plaintiff some form of shot for pain." Plaintiff states that he told the nurse that the shot was ineffective and asked to see Dr. Hamkar. According to plaintiff, the doctor refused to see him. Rather, the doctor merely gave plaintiff a "lay-in" from work.

Plaintiff claims that the next day he went back to the medical clinic and told Sweeny that his symptoms remained and asked to be seen by medical staff. Plaintiff alleges that "Sweeny refused to listen and left." Plaintiff states that he was eventually seen by a doctor – defendant Ma – later that day but that Ma "refused to send plaintiff out for an x-ray and without any examination orders a small increase in plaintiff's pain medication and sent plaintiff back to his cell in pain."

///

Next, plaintiff claims that by January 26, 2009, his condition has worsened. He complained of severe pain and "coughing up mucus for 12 days." Plaintiff states that he was sent to an outside hospital for x-rays and then later sent to U.S. Davis Medical Center via ambulance where he underwent emergency pulmonary surgery. Plaintiff was informed by doctors at U.C. Davis Medical Center that he had developed pneumonia and that his left lung had filled with fluid. The doctors opined that the delays in treatment had exacerbated his condition and that plaintiff was "near death." Plaintiff states that he remained in the hospital through March 2009.

### B.     The Parties' Evidence

#### 1.     Defendants' Evidence

Defendants' evidence, consisting of defendants' declarations, counsel's declaration, various medical records, and the transcript of plaintiff's deposition, reveals the following:

- Plaintiff's claim against defendant Hamkar involves his allegations that: (1) the doctor refused to speak with plaintiff or provide treatment on January 14, 2009, and instead ordered a nurse, Suma Joseph, R.N., to give plaintiff an injection of Toradol; and (2) he had to "beg" the doctor to be sent for an x-ray.

- No records show that defendant Hamkar ever saw or treated plaintiff on January 14, 2009.

- Plaintiff was seen by triage nurse Joseph on January 14, 2009.

- Triage notes from January 14, 2009, do not indicate that plaintiff was referred for a clinic appointment, indicating that the triage nurse did not feel that plaintiff needed to be seen by a doctor immediately.

- Defendant Ma, a prison doctor, saw plaintiff clinically on January 13, 2009 – the day before he was seen by Nurse Joseph – incident to a scheduled appointment; Dr. Ma saw plaintiff for his chronic asthma, alleged rhinitis, and chronic low back pain.

- Defendant Ma did not take plaintiff's vitals, but recorded entries made by the triage nurse prior to the visit.

- Dr. Ma performed a physical examination on January 13, 2009.

- On January 13, 2009, plaintiff had a temperature of 99 degrees, which is not considered a fever in an adult.

- In response to plaintiff's asthma, Dr. Ma believed that plaintiff should be seen by an asthma or allergy specialist.

- As to plaintiff's chronic low back pain complaints, Dr. Ma refilled plaintiff's prescription for Tramadol, a pain reliever.

- At the January 13, 2009, visit, plaintiff refused Dr. Ma's recommendation that he get a flu shot.

- At the January 13, 2009, visit, Dr. Ma wrote an order for a complete blood panel, made a referral for plaintiff to be seen by an outside specialist, and wrote an order for plaintiff to be seen in the prison medical clinic again in three weeks for a follow-up.

- Dr. Ma saw plaintiff again on January 15, 2009, after plaintiff complained of hurting his back while working in the kitchen and Dr. Ma prescribed 40 mg of Prednisone to decrease inflammation; Dr. Ma also prescribed an increased dosage of pain medication to 150 mg; finally, the doctor wrote an order for plaintiff to be seen again in two weeks and for plaintiff to be excused from work duties for seven days.

- Plaintiff again requested to be seen in the medical clinic on January 18, 2009, complaining that he hurt himself "lifting metal pans at work."

- Plaintiff's request was screened by a triage nurse on January 20, 2009, and plaintiff was scheduled for a further triage on January 21, 2009, but refused to be seen.

- Dr. Hamkar again saw plaintiff on January 26, 2009; on examination the doctor noted that plaintiff was wheezing and appeared to be having difficulty breathing; Dr. Hamkar ordered that an antibiotic medication be given intramuscularly and that plaintiff be provided an Albuterol nebulizer to use while in the medical clinic; the doctor diagnosed pneumonia.

- No x-rays were available at the time so Dr. Hamkar ordered that plaintiff be referred to Mercy Folsom Hospital for an x-ray and complete blood count.

- Defendant Sweeny, a prison staff person responsible for handing out medications, was approached by plaintiff in January 2009; at that time plaintiff requested to be seen by medical staff for complaints of back pain and defendant Sweeny instructed plaintiff that he had to fill out a "7362 form" outlining his medical complaints to the condition could be triaged by a nurse.

///

- The medical alarm was never sounded when plaintiff saw defendant Sweeny, indicating that plaintiff never complained to Sweeny of

Case 2:10-cv-01695-JAM-CMK   Document 46   Filed 09/06/13   Page 5 of 12

an emergency medical situation; plaintiff never told Sweeny that he had chest pain; Sweeny never saw plaintiff with a medical condition which she believed would have necessitated an emergency medical alarm.

2. <u>Plaintiff's Evidence</u>

In his opposition, plaintiff presents excepts of his deposition transcript, refers to defendants' declarations, and presents a new declaration – that of inmate Andre Booker. Mr. Booker states:

> • On January 14, 2009, inmate Booker noted that plaintiff appeared to be in severe pain and assisted him down the stairs to where Sweeny was distributing medication.
>
> • Plaintiff told Sweeny that he was experiencing severe pain on his left side, his back, and his chest. Book er heard plaintiff ask Sweeny is he could go to the clinic. According to Booker, Sweeny said "no." According to Booker. Sweeny continued to hand out medication to other inmates all the while ignoring plaintiff who was "bent over in obvious pain."
>
> • Plaintiff then refused to return to his cell until he received medical attention.
>
> • About 20 minutes later correctional officer Garcia escorted plaintiff to the medical clinic.
>
> • About an hour later, inmate Booker observed plaintiff walk back into their housing section. Plaintiff appeared to still be in pain.
>
> • According to inmate Booker, the same events occurred the following day – Sweeny refused to send plaintiff to the medical clinic after plaintiff complained of pain.
>
> • Booker heard plaintiff complain of severe pain over the next 12 days.
>
> • Booker states that, on January 26, 2009, Sweeny once again refused to provide plaintiff medical treatment despite his complaints of pain and worsening condition.

///

///

///

**II. STANDARDS FOR SUMMARY JUDGMENT**

5

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.
>
> Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433,

1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

### III. DISCUSSION

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v.

Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical

treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

In their motion for summary judgment, defendants argue:

> LACEY had no complaints about the treatment he had been provided by his primary care doctors, HAMKAR and MA, or about Nurse SWEENY, prior to January 13, 2009. The evidence is clear that, contrary to ignoring LACEY'S medical condition, DRS. MA and HAMKAR responded quickly and competently to LACEY'S medical needs. SWEENY simply provided LACEY with the information necessary to obtain an appointment and would have sounded an alarm had he needed emergency treatment. LACEY was seen by medical staff four times in January and refused a fifth appointment.

As to Sweeny, the gravamen of plaintiff's claim is that, despite presenting in obvious pain, Sweeny refused his requests to be sent to the medical clinic. The evidence presented by defendants shows that one of two scenarios can occur when an inmate approaches the nurse (Sweeney in this case) while handing out medication: (1) if the inmate tells the nurse that the situation is a medical emergency, an alarm is sounded and the inmate is taken to the medical clinic on a stretcher; or (2) the inmate must complete a form requesting an appointment with the medical clinic. In this case, there is no evidence that plaintiff ever informed Sweeny that he believed his situation constituted a medical emergency. Rather, the evidence shows that Sweeny did not feel that plaintiff's condition was emergent and that plaintiff was seen the same day in the medical clinic. Thus, at best, plaintiff's claim against Sweeny amounts to a difference of medical opinion – in plaintiff's opinion his condition represented a medical emergency; in Sweeny's opinion it did not. Given this record, plaintiff cannot prevail against Sweeny.

Inmate Booker's declaration does not change the court's analysis. Booker, for his part, states that plaintiff presented to Sweeny and that Sweeny refused to send plaintiff to the medical clinic. This evidence is consistent with defendants' evidence and does not create a genuine dispute as to any material fact. Accepting Booker's statements for the moment, they do not suggest why Sweeny refused to refer plaintiff to the medical clinic. The inference plaintiff would like the court to draw from Booker's declaration is that Sweeny refused to send him to the medical clinic in order to cause plaintiff to suffer. Plaintiff has not, however, supplied a factual predicate for such an inference. While it is undisputed that Sweeny refused to refer plaintiff for a medical clinic, the uncontradicted evidence shows that Sweeny did so because, in her opinion, she did not feel that plaintiff's situation was emergent. Booker's non-expert statements to the contrary do not create a genuine dispute on this point.

As to defendant Ma, the record shows that he provided plaintiff medical treatment on several occasions. Ma conducted a physical examination on January 13, 2009. At that time, plaintiff had a fever. Ma recommended that plaintiff get a flue shot, which plaintiff refused. Ma also refilled plaintiff's prescriptions for pain medication. Ma next saw plaintiff on January 15, 2009, after complaining of pain following a back injury. Ma increased plaintiff's pain medication and directed plaintiff to return to the medical clinic in two weeks for a follow-up appointment.

In his opposition to defendants' motion for summary judgment, plaintiff acknowledges that he was seen by defendant Ma on several occasions. He complains that Ma refused to send plaintiff out for an x-ray and, while asserting that "Dr. Ma did nothing," admits that Ma examined him and adjusted his medication. As with Sweeny, the evidence shows that plaintiff's claim against Dr. Ma amounts to a difference of medical opinion as to the proper course of treatment.

///

As to defendant Hamkar, the evidence shows that this doctor treated plaintiff on

1  January 26, 2009, at which time an examination was performed and medication was provided.
2  As with Dr. Ma, plaintiff disagrees with the course of treatment provided by Dr. Hamkar.
3  Because the evidence shows that plaintiff was treated by Dr. Hamkar in response to his
4  complaints, plaintiff cannot establish the requisite deliberate indifference.
5        Finally, the court addresses plaintiff's request pursuant to Federal Rule of Civil
6  Procedure 56(d), presented in his opposition to defendants' motion, for a continuance to that
7  plaintiff may take defendants' depositions.  This request should be denied because, as
8  defendants note, their motion for summary judgment was brought at the end of litigation and
9  plaintiff has had ample time to conduct discovery.  Specifically, discovery opened in February
10 2010 and closed in June 2011.  At no point during this time period did plaintiff bring difficulties
11 with respect to defendants' depositions to the court's attention.  Plaintiff's eleventh-hour request
12 should be denied.
13 / / /
14 / / /
15 / / /
16 / / /
17 / / /
18 / / /
19 / / /
20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26

### IV.  CONCLUSION

Plaintiff's claims in this case are essentially state law claims for professional negligence which are not cognizable under § 1983.  Based on the foregoing, the undersigned recommends that defendants' motion for summary judgment (Docs. 18, 19, 20, 21, 22, and 23) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 5, 2013

*Craig M. Kellison*
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE